UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| RASHEEN GIRAUD,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:20-cv-906(SRU) |
| | : |
| DR. CUEVAS,<br>    Defendant. | :<br>: |

**<u>INITIAL REVIEW ORDER</u>**

Rasheen Giraud, currently incarcerated at Cheshire Correctional Institution, has filed a complaint under 42 U.S.C. § 1983 against Dr. Cuevas, a dentist who worked at MacDougall-Walker Correctional Institution in 2017 and 2018. For the reasons set forth below, the complaint is dismissed in part.

**I.     Standard of Review**

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.  That standard of review "applies to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid a filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Although detailed allegations are not required, a complaint must include sufficient facts to afford the defendants fair notice of the claims and grounds upon which they are based and to demonstrate a plausible right to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90. 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.  Factual Allegations

On December 18, 2017, Giraud was seen by Dr. Cuevas to have a tooth extracted. Compl., Doc. No. 1 at ¶ 1. In the days following the extraction, Giraud began to experience pain and swelling on the right side of his face and could feel pieces of the tooth inside his jaw at the site where the tooth had been extracted. *Id.* at ¶ 2. Because of the pain and swelling, Giraud suspected that an infection had developed at the site of the extraction, and sent a request[1] for an appointment to the dental department, describing the pain and swelling he was experiencing as well as the pieces of the tooth that remained in his jaw. *Id.* at ¶ 3.

In response to the request, Dr. Cuevas examined Giraud and injected a numbing agent into his jaw to alleviate the pain. *Id.* He did not, however, provide any treatment for the underlying infection. *Id.* ¶ 4. The numbing agent eventually wore off and Giraud continued to experience pain at the site of the extraction.  *Id.* at ¶ 5. Giraud wrote to the dental department numerous times requesting to be seen but received no response. *Id.*

On January 13, 2018, Giraud informed a lieutenant in his housing unit that he was experiencing severe pain and swelling in his face. *Id.* ¶ 6. The lieutenant sent Giraud to the medical department. *Id.* After a medical provider took Giraud's vital signs, he was taken to the

---

[1] Giraud alleges that he sent the request on December 16, 2017; it appears, however, that he is mistaken about the date because the extraction did not take place until December 18, 2017. *Id.* at ¶ 3.

hospital. *Id.*

At the hospital, a medical provider informed Giraud that an abscess had developed at the site of the extraction and told him that if the infection had been left untreated, he could have died. *Id.* ¶ 7. The medical provider incised and drained the abscess in Giraud's gum and placed a drain in the area of the abscess to allow for further drainage. *Id.* The hospital dentist told Giraud that the bone or tooth fragments that remained in his jaw, as well as another tooth, would need to be extracted at a later time. *Id.*

On January 27, 2018, Giraud sent a request to Dr. Cuevas about the drain that had been placed in his gum and indicated that the stitches in his gum were loose, making it difficult for him to brush his teeth and painful for him to eat. *Id.* ¶ 8. On January 31, 2018, Dr. Cuevas examined Giraud. *Id.* ¶ 9. During the examination, the drain fell out. *Id.* Dr. Cuevas sent Giraud back to his cell without providing him any medication to relieve the pain and swelling in his face. *Id.* Giraud filed a grievance regarding Dr. Cuevas's failure to treat his painful and potentially dangerous infection as well as his failure to treat the pain and swelling following his hospital visit. *Id.* ¶ 10.

On February 7, 2018 Giraud was taken to the hospital to see an oral surgeon. *Id.* at ¶ 11. The surgeon extracted the bone fragments and the root of the tooth that Dr. Cuevas had partially extracted on December 18, 2017. *Id.* He additionally extracted a second tooth that had been damaged due to the abscess and infection that Giraud had developed at the site of the extraction of the first tooth. *Id.*

**III.    Discussion**

Giraud contends that Dr. Cuevas was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and Article First Section 9 of the Connecticut Constitution. He additionally contends that Dr. Cuevas was negligent in violation of Connecticut common law. He seeks compensatory and punitive damages.

**1. Section 1983 Claim**

    **A.    Eleventh Amendment**

Giraud does not indicate whether he sues Dr. Cuevas in his individual or official capacity. Liberally construing Giraud's *pro se* complaint, I assume that he intends to sue Dr. Cuevas in both his individual and official capacity. *See, e.g., Perry v. Wright,* 2013 U.S. Dist. LEXIS 36250, at *8 (S.D.N.Y. Mar. 8, 2013) ("[t]he Complaint does not specify in what capacity the Defendants are being sued. In liberally construing the Complaint, the Court assumes that Plaintiff intended to sue the Defendants in both their official capacity…as well as their individual capacity.").

To the extent that Giraud seeks money damages from Dr. Cuevas in his official capacity under section 1983, that request is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court...[t]his bar remains in effect when state officials are sued for damages in their official capacity"); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override "the traditional sovereign immunity of the States"). The Eleventh Amendment does not, however, bar suits for money damages against state officials acting in their individual capacities, even if the acts complained of occurred in the course of their official duties. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

4

Accordingly, Giraud's claim for money damages against Dr. Cuevas in his official capacity is dismissed. *See* 28 U.S.C. § 1915A(b)(2). Giraud's claims against Dr. Cuevas in his individual capacity may proceed consistent with the Eleventh Amendment.

### B.     Eighth Amendment

Giraud alleges that Dr. Cuevas was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by failing to provide adequate and timely treatment for his tooth infection both before and after he received treatment at the hospital.

The Eighth Amendment's ban on cruel and unusual punishment has been interpreted to prohibit deliberate indifference to an incarcerated individual's serious medical needs by medical providers and prison officials. *See Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976) (deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"). To plead that a medical provider or prison official behaved with deliberate indifference, a plaintiff must allege both the existence of a "sufficiently serious" medical need and additionally that in delaying or denying care for that need, the charged official acted with a sufficiently culpable mental state. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). The requirement that a plaintiff's condition be sufficiently serious is often referred to as the objective component of a claim for deliberate indifference, while allegations that the official possessed the requisite mental state are described as the subjective component. *Brock v Wright*, 315 F.3d 158, 162, 164 (2d Cir. 2003).

To determine whether a plaintiff has alleged a "sufficiently serious" medical need, courts in this circuit have considered a variety of factors, including whether "a reasonable doctor or

patient would find [it] important and worthy of comment or treatment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) (internal citations omitted). Under certain circumstances, a dental condition may constitute a sufficiently serious condition for purposes of the Eighth Amendment. *See, e.g., Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (tooth cavity was sufficiently serious medical need because it was a "degenerative condition that tends to cause acute infections, debilitating pain and tooth loss if left untreated"); *Williams v. Jacobson*, 2016 U.S. Dist. LEXIS 61578, at *11 (S.D.N.Y. May 9, 2016) (allegations that "broken dentures caused daily cuts and pain, and inhibited [plaintiff's] ability to eat properly" established sufficiently serious medical need); *Patterson v. Lichtenstein*, 2019 U.S. Dist. LEXIS 64037, at *7 (D. Conn. Apr. 15, 2019) (allegations that plaintiff had "difficulty eating and that food becomes lodged in his gums causing severe pain and canker sores" sufficient to establish serious medical need).

In addition to alleging a sufficiently serious medical need, a plaintiff must allege that a particular defendant acted with deliberate indifference, or "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Brock*, 315 F.3d at 164. Although a plaintiff must allege that a defendant had actual knowledge of the risk, "evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient." *Id.* Deliberate indifference requires more than mere negligence, however; it is instead a mental state equivalent to "subjective recklessness, as the term is used in criminal law." *Salahuddin* , 467 F.3d 263 at 280. Accordingly, allegations that sound in medical malpractice are insufficient to establish deliberate indifference. "A complaint that a physician has been negligent in diagnosing or treating a

medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Medical malpractice, however, may rise to the level of deliberate indifference if it "involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of harm." *Chance*, 143 F.3d at 703 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 99 F.3d 550 at 553 (2d Cir. 1996)).

Here, Giraud alleges that he developed a very serious infection following a tooth extraction by Dr. Cuevas on December 18, 2017. In response to his repeated complaints of pain and swelling, Dr. Cuevas treated the symptoms of the infection with a numbing agent but did not offer treatment for the underlying infection. After the numbing agent wore off, Giraud once again began to experience pain and had difficulty eating and sleeping. As a result of Dr. Cuevas' failure to adequately treat the infection, the swelling became severe enough that Giraud was taken to the hospital, where doctors told him that without treatment, the infection could have been life-threatening. He additionally states that as a result of the infection that developed, another tooth had to be extracted. Allegations that the infection caused him substantial pain, interfered with his ability to eat and sleep, became serious enough that it was potentially life-threatening and led to the loss of a second tooth are sufficient to establish a serious medical need for purposes of the Eighth Amendment.

Giraud has also alleged that he made Dr. Cuevas aware that he had loose bone fragments in his jaw, that he was experiencing extreme pain and swelling in the entire right side of his face and that he was concerned he had an infection. However, Dr. Cuevas offered Giraud no

7

treatment other than a numbing agent and ignored Giraud's subsequent requests for treatment as his symptoms worsened. Following Giraud's hospital visit, Dr. Cuevas again failed to treat the pain and swelling caused by the healing abscess and drain. Allegations that Dr. Cuevas was aware that Giraud was in extreme pain and may have developed an infection at the extraction site yet failed to offer adequate treatment are sufficient to evince "a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703. Accordingly, the claim for deliberate indifference to serious medical needs will proceed against Dr. Cuevas in his individual capacity.[2]

    **2.**     **State Law Claims**

        **i.**     **Negligence Claim**

In addition to his Eighth Amendment claim, Giraud contends that Dr. Cuevas' failure to treat his infection constituted negligence as defined by Connecticut common law. Because Giraud does not specify whether he brings the claim against Dr. Cuevas in his individual or official capacity, I will consider whether the claim is cognizable against Dr. Cuevas in both his official and individual capacities.

Under Connecticut law, claims seeking damages against state employees in their individual capacities are barred by Conn. Gen. Stat. § 4-165(a), which provides: "[n]o state officer or employee shall be personally liable for damages or injury, not wanton or reckless or

---

[2] I note that it is not clear from the face of the complaint whether Giraud properly exhausted the available administrative remedies provided by State of Connecticut Administrative Directive 8.9 (Administrative Remedy for Health Services) prior to filing suit as required under 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) ("The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.") (quoting 42 U.S.C. § 1997e(a)). Although Giraud states that he filed a grievance after Dr. Cuevas examined him on January 31, 2018 he does not indicate whether he attempted to informally resolve the issue prior to filing the grievance as required by Administrative Directive 8.9 (10), or whether he received a response to that grievance. Compl. Doc. No. 1 at 10. He additionally does not indicate whether the grievance was filed to address an issue with as diagnosis or treatment or to address an administrative issue. *See* Administrative Directive 8.9(11) and (12). Because it is not clear from the face of the complaint that Giraud failed to exhaust available administrative remedies prior to filing suit, I will permit

malicious, caused in the discharge of his duties or within the scope of his employment." State employees therefore cannot be held personally liable for negligent actions so long as those actions are performed within the scope of employment. *Miller v. Egan*, 265 Conn. 301, 319 (2003). In order to overcome that statutory immunity, a plaintiff must adequately allege that the official's conduct was "wanton, reckless or malicious", a standard defined by Connecticut courts as "more than negligence, more than gross negligence." *Martin v. Brady*, 261 Conn. 372, 379 (2002).

Giraud has raised only a claim of simple negligence against Dr. Cuevas and does not allege Dr. Cuevas was acting outside the scope of his employment. Accordingly, the state law negligence claim asserted against Dr. Cuevas in his individual capacity is dismissed as barred by statutory immunity under Conn. Gen. Stat. § 4-165.  *See* 28 U.S.C. § 1915A(b)(2).

To the extent Giraud seeks instead to bring a claim for negligence against Dr. Cuevas in his official capacity, "[i]t is settled law in Connecticut that the state is immune from suit unless, by appropriate legislation, it authorizes or consents to suit." *First Union Nat'l Bank v. Hi Ho Mall Shopping Ventures, Inc.*, 273 Conn. 287, 293-94 (2005) (citation omitted). The principle of sovereign immunity applies to lawsuits against a state as well as to lawsuits against a state official in his or her official capacity. "[B]ecause the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." *Miller*, 265 Conn. at 313. There are three exceptions to that bar on suits against states and state officials:

> (1) when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity; (2) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or one of its officers has

---

the claim to proceed for purposes of initial review.

> violated the plaintiff's constitutional rights; and (3) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority.

*Columbia Air Services v. DOT*, 293 Conn. 342, 349 (2009) (citations omitted). Moreover, in the absence of statutory waiver, a "plaintiff may not bring an action against the state for monetary damages without authorization from the claims commissioner to do so." *Id.* at 351. Giraud has alleged no facts suggesting that sovereign immunity has been waived, nor has he alleged that he sought or obtained authorization from the claims commissioner prior to filing suit. Accordingly, the state law negligence claim asserted against Dr. Cuevas in his official capacity is dismissed as barred by sovereign immunity. *See* 28 U.S.C. § 1915A(b)(2).

    **ii.**    **Claim Under the Connecticut Constitution**

Giraud contends that Dr. Cuevas was deliberately indifferent to his medical needs in violation of Article First § 9 of the Connecticut Constitution. Section 9 of Article First provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law." Conn. Const. art. 1, § 9. In *Binette v. Sabo*, 244 Conn. 23, 41-47 (1998), the Connecticut Supreme Court relied on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to recognize a private cause of action for monetary damages against municipal police officers for violations of Article First, §§ 7 and 9 of the Connecticut Constitution based on a claim of unreasonable search and seizure. In reaching that decision, however, the Supreme Court was careful to emphasize the narrowness of that remedy, noting "our decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47.

The Connecticut Supreme Court has yet to recognize a private cause of action for money damages under Article First, Section 9 of the Connecticut Constitution for deliberate indifference to the serious medical needs of an inmate confined at a state prison facility. *See Torres v. Armstrong*, 2001 WL 1178581 (Conn. Super. Ct. Sept. 6, 2001) (narrowly construing *Binette* in a civil action asserting claims of violations of an inmate's rights and declining to recognize claims for money damages brought directly under Article First, Sections 1, 4, 8, 9, 14 and 20 of the Connecticut Constitution); *see also Harnage v. Shari,* 2019 U.S. Dist. LEXIS 226648, at *17 (D. Conn. Dec. 3, 2019) ("although the Connecticut Supreme Court created a cause of action under Article First, §§ 7 and 9 for a Bivens-type claim, it has not applied § 9 in the context of a prisoner case involving a claim for deliberate indifference to a prisoner'kjms serious medical need").

Because the Connecticut Supreme Court has yet to recognize a private cause of action for money damages for violations of Article First, Section 9 in the context of a claim for deliberate indifference to an incarcerated individual's serious medical need, adjudicating the claim would necessarily raise novel or complex issues of state law. Accordingly, I decline to exercise supplemental jurisdiction over Giraud's state constitutional claim. *See* 28 U.S.C. § 1367(c)(1); *see also Seabrook v. Jacobson*, 153 F. 3d 70, 72 (2d Cir. 1996) ("[w]here a pendent state claim turns on novel or unresolved questions of state law…principles of federalism and comity may dictate that these questions be left for decision by the state courts.").

## IV.     Conclusion

The Eighth Amendment claim raised against Dr. Cuevas in his official capacity is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The state law negligence claim against Dr.

Cuevas is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2)**.** I decline to exercise supplemental jurisdiction over the claim asserted under Article First, § 9 of the Connecticut Constitution. *See* 28 U.S.C. § 1367(c). The Eighth Amendment claim for deliberate indifference to serious medical needs will proceed against Dr. Cuevas in his individual capacity.

The court enters the following additional orders.

**(1)** The Clerk shall verify the current work address of Dr. Cuevas and mail a copy of the complaint, this order, and a waiver of service of process request packet to Dr. Cuevas in his individual capacity at his confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of the request. If Dr. Cuevas fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and Dr. Cuevas shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(2)** Defendant Cuevas shall file a response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If the defendant chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. He may also include all additional defenses permitted by the Federal Rules.

**(3)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order. Discovery requests need not be filed with the Court.

**(4)** All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

**(5)** If Giraud changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that Giraud MUST notify the Court. Failure to do so can result in the dismissal of the case. Giraud must give notice of a new address even if he is incarcerated. Giraud should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Giraud has more than one pending case, he should indicate all case numbers in the notification of change of address. Giraud should also notify the defendants or the attorney for the defendants of his new address.

**(6)** Giraud shall utilize the Prisoner Efiling Program when filing documents with the Court. Giraud is advised that the Program may be used only to file documents with the Court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court. Therefore, discovery requests must be served on the defendant's attorney by regular mail.

**(7)** The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**(8)** The Clerk shall send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit

SO ORDERED.

Dated at Bridgeport, Connecticut, this 19th day of April 2021.

                                            /s/ STEFAN R. UNDERHILL
                                            Stefan R. Underhill
                                            United States District Judge