UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RASHEEN GIRAUD,
    Plaintiff,

v.

CUEVAS,
    Defendant.

No. 3:20-cv-906 (SRU)

### ORDER ON MOTION FOR SUMMARY JUDGMENT

Rasheen Giraud ("Giraud"), a prisoner in the custody of the Connecticut Department of Correction, brought this Eighth Amendment deliberate indifference claim against Dr. Frankie Cuevas ("Cuevas"), his prison dentist. Cuevas has filed a motion for summary judgment seeking to dismiss this case. Doc. No. 86. For the reasons discussed below, that motion is **granted**.

### I.    Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings but must

present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-27 (1986).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

> The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

**II.    Background**

Giraud was incarcerated at MacDougall-Walker Correctional Institute ("MWCI") from November 22, 2017 through January 29, 2019. Jackson Decl., Doc. No. 86-4 at ¶ 12. The events at issue in this case took place at the end of 2017 and beginning of 2018.

Before the timeframe at issue, Giraud had several encounters with the prison dental department regarding his teeth. Dental records regarding those visits date as far back as June 2015. *See* Cuevas Decl., Doc. No. 86-3 at ¶¶ 13-17; Def's Ex. 1, Doc. No. 88 at 43. At that time, Giraud was incarcerated at Garner Correctional Institution and therefore saw dentists other than Cuevas. *See* Cuevas Decl., Doc. No. 86-3 at ¶ 18. Medical records from that period show that several of Giraud's teeth were noted as broken or decaying, and tooth # 4 and tooth # 17 were

2

deemed non-restorable. Def.'s Ex. 1, Doc. No. 88 at 43. On March 24, 2016, a dentist extracted tooth # 4, but was unable to extract the roots of that tooth. Cuevas Decl., Doc. No. 86-3 at ¶ 15. In the dentist's notes, the dentist wrote that he "explained the situation to [Giraud]," and that "if any future complications happen, we need to have an oral surgeon address the issue." Def.'s Ex. 1, Doc. No. 88 at 40. Medical notes from April 4, 2016 show that Giraud saw a dentist, who offered to remove the roots of tooth # 4, but Giraud declined. *Id*. at 38.

Giraud states in his deposition that, on December 16, 2017, he was experiencing extreme pain in his mouth and face. Giraud Depo., Doc. No. 86-6 at 10. He called his father that day to tell him about the pain. *Id*. Giraud also filed an inmate request form that day, stating that his "whole face" on the "right side was in so much pain" that even his "right eye" hurt. Def.'s Ex. 3, Doc. No. 86-4 at 24. Giraud further wrote that the "[l]ast time [his] tooth was pulled out," the dentist "left [two] fragments of the bone sticking out of [his] gums," and one of the bones was sticking out of the roof of his mouth with blood coming out. *Id*. Giraud wrote that even at the time of the extraction, the dentist "was really hurting" him. *Id.* Giraud also stated in his inmate request form that he had spoken to his father, and that his father had suggested that his tooth may be infected. *Id.* at 24-25.

Giraud was seen by Cuevas on December 18, 2017. *Id.*; Cuevas Decl. Doc. No. 86-3 at ¶ 19. Giraud states in his deposition that Cuevas administered a numbing agent to treat Giraud's pain. Giraud Depo., Doc. No. 86-6 at 13-14. Giraud testifies that Cuevas did not speak much during that appointment and did not tell him anything about the possibility of an infection. *Id*. at 15, 43. Cuevas submits in his declaration that he did not observe swelling in Giraud's face, and that although he did not see any signs or symptoms of an infection or of an abscess, he "suspected the development of an infection." Cuevas Decl., Doc. No. 86-3 at ¶¶ 19-21. Cuevas

3

further explains that an infection "would require an oral surgeon's removal of the retained roots associated with tooth # 4." *Id*. Cuevas states that, in addition to administering anesthesia and Marcaine with epinephrine to the area of pain, Cuevas prescribed Motrin to Giraud. *Id*. at ¶ 21. He also declares that he prescribed amoxicillin. *Id*.; Doc. No. 94-1 at ¶ 28. Medical records show that Cuevas prescribed Giraud amoxicillin on December 18, 2017, for Giraud to take until December 25, 2017. Doc. No. 88 at 52.

Cuevas further asserts that he "submitted a request for approval for [Giraud] to be seen by an oral surgeon," which "was approved on Wednesday, December 27, 2017." Cuevas Decl., Doc. No. 86-3 at ¶¶ 22-23. He explains that the approval of the request is only one step, and that the next step involves scheduling the appointment—a process with which he is not involved. *Id*. Giraud admits: that Cuevas submitted the request, that "requests for specialty services required approval prior to scheduling," and that the "request was approved on Wednesday, December 27, 2017." *See* Doc. No. 94-1 at ¶¶ 29-31. Giraud also admits that "[a]ppointments are based on the availability of the oral surgeon," and "Cuevas cannot dictate when an appointment will be made available with the surgeon." *Id*. at ¶¶ 33-34.

Giraud submits by affidavit that he "wrote to medical/dental for help [with his] ongoing pain multiple times after December 18, 2017 but before January 13, 2018." Giraud Aff., Doc. No. 94-2 at ¶ 4. He testified at his deposition that he believes he submitted two other requests in addition to his December 16, 2017 request, which Cuevas ignored. *Id.* at 40. He also states that he "kept going down" to medical and "kept having the [correctional officer]" and "unit manager call." Giraud Depo., Doc. No. 86-6 at 29-30. In his deposition, Giraud described that his pain amplified between December 18 and January 13, noting that "[a]t one point I thought I was

4

going to, like, pass away or stuff like that." *Id.* at 45. He was also "spitting blood up" during that time period. *Id*. at 31.

Giraud also states that he had an additional visit with Cuevas in the week leading up to January 13, 2018, during which Cuevas only "injected [his] gums three or four times with a numbing agent." Giraud Aff., Doc. No. 94-2 at ¶¶ 5-9. Giraud also submits that Cuevas's assistant gave him Motrin at that appointment. *Id*. at ¶ 10. Giraud also states that he was sent to that second visit with Cuevas after he told a nurse how many ibuprofens he was taking. Giraud Depo., Doc. No. 86-6 at 21. Cuevas denies that such a medical appointment took place because there are no medical records documenting it. Doc. No. 95 at 3. Giraud testifies during his deposition that prison medical only records a dental visit if that appointment was made pursuant to a request; if Giraud was simply sent down to medical by a correctional officer or unit manager, there would be no record of the visit. Giraud Depo., Doc. No. 86-6 at 44. When asked what evidence there would be of such an interaction between Giraud and Cuevas without a medical report, Giraud responds, "[t]he evidence would be they would have to go back and look at the camera on that day, or if—they don't keep a copy of the pass that they give me to go to Medical." *Id.* at 45.

On January 13, 2018, Giraud testifies that he was experiencing "shooting, sharp pains" to the "back of [his] eye and to [his] head area," including his forehead, and the "whole right side of [his] face was swollen." *Id*. at 20. At that point, he had been "get[ting] no sleep at all for days," and had been "taking multiple ibuprofens." *Id*. at 21. On January 13, Giraud stopped a lieutenant and told him that he was in pain, his face was swollen, and he needed to go to medical. *Id*. at 29. The light was turned on, and the lieutenant examined his face and observed the swelling. *Id*. Giraud was then taken to medical, where his vitals were taken. *Id*. Giraud was subsequently sent

5

to the emergency room at UConn. *Id.* at 22; *see also* Def.'s Ex. 1, Doc. No. 88, at 16, 18-24. He then underwent oral surgery. Giraud Depo., Doc. No. 86-6 at 23. Giraud returned from UConn in the early morning the next day. *Id.* at 22.

Cuevas called Giraud down to medical on January 16, 2018, after Giraud had returned from UConn. Cuevas Decl., Doc. No. 86-3 at ¶ 24. Cuevas submits by declaration (and Giraud disputes) that on January 16 Cuevas increased Giraud's Clindamycin prescription, which Giraud had received from UConn, based on Cuevas's observation of Giraud's face swelling. *Id.*; *see also* Doc. No. 94-1 at ¶ 35. Prison medication records corroborate Cuevas's account. *See* Doc. No. 88 at 50.

Cuevas again saw Giraud on January 31, 2018. By Giraud's account, Cuevas stuck a dental tool in Giraud's mouth and started messing with the tube that UConn had placed, and the tube fell out. Giraud Depo., Doc. No. 86-6 at 25. Cuevas also states that the drain tube fell out during his examination of Giraud. Cuevas Decl., Doc. No. 86-3 at ¶ 26. At that appointment, Cuevas "verified [that] the request for extraction of tooth # 3 and retained roots at the site of tooth # 4 to be handled by an oral surgeon was pending." *Id*.

On February 7, 2018, Giraud had an appointment with the oral surgeon at UConn, who conducted a tooth extraction, retaining tooth # 3 for monitoring. Def.'s Ex. 1, Doc. No. 88, at 13. The next appointment Cuevas had with Giraud took place on February 8, 2018. Cuevas Decl., Doc. No. 86-3 at ¶ 27. Giraud has not attended an appointment with Cuevas since that February 8, 2018 visit, and Cuevas's records reflect that Giraud has not seen any dentist since then. *Id.* at ¶ 31.

**III.    Discussion**

Cuevas moves for summary judgment on three grounds: failure to exhaust, Giraud's deliberate indifference claim fails as a matter of law, and qualified immunity. *See generally* Doc. No. 86-1. For the reasons discussed below, Cuevas's motion for summary judgment is **granted**.

I first turn to Cuevas's argument that Giraud's deliberate indifference claim fails as a matter of law. Doc. No. 86-1 at 11. The Eighth Amendment prohibits deliberate indifference to a prisoner's serious medical needs by medical providers and prison officials. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"). A deliberate indifference claim has two elements: first, a "sufficiently serious" medical need, and, second, that an official acted with a sufficiently culpable mental state in delaying or denying care for that need. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006); *see also Brock v Wright*, 315 F.3d 158, 162, 164 (2d Cir. 2003).

   A.   <u>Sufficiently Serious Medical Need</u>

Courts consider several factors in determining whether a medical need is "sufficiently serious," including considering whether "a reasonable doctor or patient would find [it] important and worthy of comment or treatment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted). A dental condition can be a sufficiently serious medical condition. *See, e.g.*, *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (tooth cavity was a sufficiently serious medical condition because it was a "degenerative condition that tends to cause acute infections, debilitating pain and tooth loss if left untreated");

7

*Patterson v. Lichtenstein*, 2019 U.S. Dist. LEXIS 64037, at *7 (D. Conn. Apr. 15, 2019) (allegations that the plaintiff was having "difficulty eating and that food becomes lodged in his gums causing severe pain and canker sores" were sufficient to establish serious medical need); *Williams v. Jacobson*, 2016 U.S. Dist. LEXIS 61578, at *11 (S.D.N.Y. May 9, 2016) (allegations that "broken dentures caused daily cuts and pain, and inhibited [plaintiff's] ability to eat properly" satisfied sufficiently serious medical need element).

Here, Cuevas does not appear to dispute that Giraud suffered a serious medical need. Indeed, record facts, when read in Giraud's favor, support that he did suffer such a need. *E.g.*, Def.'s Ex. 4, Doc. No. 86-4 at 27 (inmate request form in which Giraud states that that the medical staff at UConn said that if he had "waited any longer [he] would [have] died."); Giraud Depo., Doc. No. 86-6 at 34-35 (testifying to the same statement by UConn doctor). Giraud has therefore met the first element of his deliberate indifference claim.

B. Defendant's Mental State

The second element of a deliberate indifference claim is that the defendant acted with deliberate indifference, or "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Brock*, 315 F.3d at 164 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Although a plaintiff must show that a defendant had actual knowledge of the risk, "evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient." *Id*. Deliberate indifference is more than mere negligence—it is equivalent to "subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280. In general, medical malpractice does not suffice for deliberate indifference. *Estelle*, 429 U.S. at 106 ("A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical

malpractice does not become a constitutional violation merely because the victim is a prisoner."). Medical malpractice, may, however, rise to deliberate indifference if it "involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of harm.'" *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

In his declaration, Cuevas states that when he saw Giraud on December 18, 2017, he "did not observe any signs or symptoms of infection or the formation of an abscess," but he did "suspect[] the development of an infection." Cuevas Decl., Doc. No. 86-3 at ¶¶ 20-21. Therefore, although Cuevas did not have actual knowledge that an infection was present, Cuevas had actual knowledge that there was a risk of infection.

Cuevas submits that he prescribed Giraud amoxicillin at the December 18, 2017 appointment. *Id.* at ¶ 21. Medical records support that declaration—records show that Cuevas prescribed Giraud amoxicillin on December 18, 2017, for Giraud to take until December 25, 2017. Doc. No. 88 at 52. Giraud, by contrast, denies that he was prescribed amoxicillin. *See* Doc. No. 94-1 at ¶ 28. Courts in this circuit, however, have not credited conclusory allegations of not receiving medication, where medical records refute those allegations. *Cabassa v. Ostheimer*, 2017 WL 2785334, at *2-*3 (D. Conn. 2017) (not crediting prisoner's statement that he never received pain medication where prison medical record showed he received pain medication); *Benitez v. Pecenco,* 1995 WL 444352 at *3 n.5 (S.D.N.Y. July 27, 1995) (not crediting plaintiff's conclusory allegation that he was never issued medication where that allegation was contradicted by medical records). Here, Giraud's denial in his Local Rule 56(a)2 statement is conclusory and insufficient to oppose Cuevas's evidence of the prescription. *See Celotex Corp.*, 477 U.S. at 325-27. Moreover, even if I were to credit the fact of the progression of Giraud's infection as

9

evidence that Giraud did not *take* antibiotics, that alone is insufficient to oppose Cuevas's evidence that he *prescribed* Giraud antibiotics.[1]

Apart from prescribing antibiotics, it is undisputed that Cuevas applied a numbing agent to Giraud's gums during the December 18 appointment in order to treat Giraud's pain. Giraud Depo., Doc. No. 86-6 at 14-15. It is also undisputed that after the December 18 appointment, Cuevas "submitted a request for approval for [Giraud] to be seen by an oral surgeon," which "was approved on Wednesday, December 27, 2017." Cuevas Decl., Doc. No. 86-3 at ¶¶ 22-23. Furthermore, it is undisputed that "[a]ppointments are based on the availability of the oral surgeon," and "Cuevas cannot dictate when an appointment will be made available with the surgeon." Doc. No. 94-1 at ¶¶ 33-34. Finally, it is undisputed that Giraud received over-the-counter pain medication from medical, even though Giraud testifies that his pain was too severe for those medications to sufficiently treat his pain. Giraud Depo., Doc. No. 86-6 at 15-16. The record therefore shows that, in connection with the December 18, 2017 appointment, Cuevas prescribed Giraud antibiotics, treated his pain through a numbing agent and through over-the-counter painkillers, and put in a request for Giraud to see an oral surgeon. Those facts do not support a claim that Cuevas was deliberately indifferent to Giraud's medical needs at that point in time.

Giraud further submits that he saw Cuevas for another visit in the week leading up to January 13. Giraud Aff., Doc. No. 94-2 at ¶¶ 5-9. Giraud avers that Cuevas only administered a numbing agent during that visit and that neither Cuevas nor his dental staff took Giraud's temperature. *Id*. Apart from Giraud's deposition and affidavit, there is little by way of evidence

---

[1] I am not suggesting that Giraud was provided antibiotics and did not take them. Cuevas's prescription was only the first step in the series of steps necessary to get medication to Giraud. Because prescription was the only step within the control of Cuevas, however, any failure to fill that prescription and provide the antibiotics to Giraud cannot be attributed to Cuevas.

in the record of that second visit. The parties do not dispute that there is no medical record of that visit. *See* Giraud Depo., Doc. No. 86-6 at 44-45; Cuevas Decl., Doc. No. 86-3 at ¶ 24. Furthermore, Giraud's own filings in this case, prior to his deposition and affidavit, make no mention of that second visit. *See, e.g.*, Doc. No. 1 at 5-6 (first complaint); Doc. No. 33 at 5-6 (first amended complaint); Doc. No. 68 at 2 (second amended complaint); Doc. No. 86-4 at 27 (inmate request form dated January 27, 2018); Doc. No. 86-5 at 3 (incomplete inmate administrative remedy form). Giraud's conclusory statements regarding a second visit, made only in his recent deposition and affidavit, are therefore insufficient to create a "genuine" issue of material fact "such that a reasonable jury could return a verdict" on that issue in Giraud's favor. *Anderson*, 477 U.S. at 248.

Moreover, even if I were to credit Giraud's testimony regarding the second visit, his description of that second visit cannot support a finding of deliberate indifference. According to Giraud's account of events, Cuevas treated Giraud's pain at that second visit by administering a numbing agent. Giraud Aff., Doc. No. 94-2 at ¶ 9. Although merely administering a numbing agent when additional care was needed may amount to medical malpractice, it does not support a finding of deliberate indifference. *See Harrison*, 219 F.3d at 139 (the "principle" that "mere malpractice of medicine in prison does not amount to an Eighth Amendment violation . . . may cover a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial").

After Giraud's emergency surgery on January 13, 2018, it is undisputed that Cuevas saw Giraud on January 16, 2018. Cuevas Decl., Doc. No. 86-3 at ¶ 24; Doc. No. 94-1 at ¶ 35. It is also undisputed that Cuevas saw Giraud on January 31, 2018. Cuevas Decl., Doc. No. 86-3 at

11

¶ 26; Doc. No. 94-1 at ¶ 37. Giraud grieves Cuevas's conduct during the January 31, 2018 dental visit, during which Cuevas used a dental tool in Giraud's mouth, causing the drain tube that UConn had placed to fall out. Giraud Depo., Doc. No. 86-6 at 25; Cuevas Decl., Doc. No. 86-3 at ¶ 26. Reading the facts of that incident in Giraud's favor, it appears that Cuevas made a mistake that potentially made matters worse for Giraud's recovery. Nevertheless, "inadvertent failure to provide adequate medical care" is insufficient to establish deliberate indifference. *Estelle*, 429 U.S. at 105-06. Accordingly, the incident with the drain tube is insufficient to establish that Cuevas was culpably reckless, as is required to support a deliberate indifference claim. *Chance*, 143 F.3d at 703.

Considering the law and all facts that are not genuinely in dispute, I conclude that Giraud's deliberate indifference claim fails as a matter of law. Apart from that conclusion, however, this Court takes no position on the adequacy of Cuevas's care. It is possible that Cuevas's care for Giraud may have amounted to medical malpractice. Nevertheless, as previously explained, medical malpractice alone does not amount to a violation of a constitutional right. *Harrison*, 219 F.3d at 139.

Because Giraud's deliberate indifference claim fails as a matter of law, this Court need not address Cuevas's arguments regarding exhaustion or qualified immunity. Cuevas's motion for summary judgment is thus **granted**. Doc. No. 86.

## IV.  Conclusion

For the foregoing reasons, Cuevas's motion for summary judgment, doc. no. 86, is **granted.** The Clerk is directed to close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 14th day of March 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge
